IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DOMINIC SCATASTI, Individually and as Representative of the Estate of NICOLE SCATASTI, and as Guardian of T.C., a Minor,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | C.A. NO.:<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

1. This action arises under the Federal Tort Claim Act, 28 U.S.C. § § 1346(b), 2671-80.

2. Jurisdiction is founded on 28 U.S.C. § 1346(b).

3. Plaintiff Dominic Scatasti Sr., Personal Representative of the Estate of Nicole Scatasti, (hereinafter "Mrs. Scatasti") and husband of decedent, is a citizen of the State of Delaware.

4. Plaintiff T.C., a minor and only child of decedent, is a citizen of the State of Delaware residing with her guardian Dominic Scatasti.

5. At all times relevant hereto, the United States Department of Veterans Affairs Medical Services Division, a department of defendant, operated and staffed the Veterans Administration Medical Center in Wilmington, Delaware (hereinafter "the VAMC").

6. Affidavits of Merit of appropriately-credentialed experts, together with curriculum vitae, have been filed with the Court in accordance with 18 Del. C. § 6853(a)(1).

7. The VAMC was decedent's primary health care provider and she received medical care and treatment at the VAMC from agents, servants and employees of defendant.

8. At all times relevant hereto, agents, servants and employees of defendant assigned to the VAMC were acting within the course and scope of their employment.

9. At all times relevant hereto, decedent was diagnosed with, *inter alia*, mixed hyperlipidemia by VAMC providers.

10. Upon information and belief, decedent was prescribed Gemfibrozil for as an anti-lipid medication by VAMC providers.

11. Upon information and belief, the Gemfibrozil was discontinued by VAMC providers.

12. Upon information and belief, the last time decedent's triglyceride level was checked by VAMC was May 22, 2014.

13. On May 22, 2014, decedent's triglyceride level was 322.

14. On May 22, 2014, Diane Terranova, ARNP, who was decedent's primary health care provider within the VAMC, noted that that Gemfibrozil should be restarted.

15. Upon information and belief, Nurse Terranova never ordered Gemfibrozil or noted that decedent was educated on the risks and benefits of Gemfibrozil.

16. Between May 22, 2014 and March 16, 2016, Gemfibrozil was not included on decedent's medication list.

17. On July 15, 2015, decedent presented to Nurse Terranova with complaints of pelvic pain.

18. VAMC providers, including Nurse Terranova, failed to recommend any treatment or management of decedent's triglycerides other than weigh control, exercise, and diet.

19. On July 18, 2015, Decedent presented to the emergency room at the VAMC in complaining of left lower quadrant pain.

20. VAMC providers ordered a blood test, which was interpreted by VAMC providers as being "grossly 2+ lipemic."

21. A blood test indicating that a blood sample is "grossly lipemic" is a critical finding that warrants immediate follow-up and treatment.

22. VAMC providers failed to recommend any treatment for the abnormal blood test indicating decedent's blood was "grossly 2+ lipemic."

23. Nurse Terranova signed off on the note from that emergency room visit.

24. On July 31, 2015, decedent again presented to Nurse Terranova in follow-up of pelvic pain.

25. VAMC providers, including Nurse Terranova, failed to recommend any treatment for the abnormal blood test indicating decedent's blood was "grossly 2+ lipemic."

26. VAMC providers ordered a subsequent blood test, which was interpreted on September 10, 2015 as again being "grossly lipemic."

27. VAMC providers failed to recommend any treatment for the abnormal blood test indicating decedent's blood was "grossly lipemic."

28. On September 29, 2015, Victor Stelmack, M.D., a surgeon and employee/agent of the VAMC, performed a laproscopic cholecystectomy on decedent despite decedent's blood being "grossly lipemic."

29. On October 5, 2015, decedent was seen at the VAMC emergency room for "generalized abdominal pain."

30. The VAMC providers noted that decedent's blood was "grossly lipemic."

31. VAMC providers failed to recommend any treatment for the abnormal blood test indicating decedent's blood was "grossly lipemic."

32. Nurse Terranova signed off on the note from the emergency room visit.

33. On October 7, 2015, Dr. Stelmack again noted that decedent's pre-operative blood testing was "grossly lipemic."

34. Upon information and belief, Dr. Stelmack failed to recommend any treatment for the abnormal blood test indicating decedent's blood was "grossly lipemic."

35. On January 22, 2016, decedent was again seen by Nurse Terranova.

36. VAMC providers, including Nurse Terranova, again failed to recommend any treatment for the abnormal blood test indicating decedent's blood was "grossly lipemic."

37. On March 17, 2016, decedent presented to the emergency room at the VAMC, complaining of vomiting and left flank pain.

38. VAMC providers ordered a blood test, which indicated that decedent's blood was now "4+ grossly lipemic" and decedent's triglycerides were over 13,000.

39. VAMC providers diagnosed decedent with hypertriglyceridemia, causing multi-system organ dysfunction, including, *inter alia*, acute pancreatitis, acute kidney injury, respiratory distress, and metabolic acidosis.

40. On March 19, 2016, VAMC providers transferred decedent to the intensive care unit at the Christiana Care Hospital.

41. On April 21, 2016, at the age of 36, decedent died from necrotizing pancreatitis and septic shock.

42. Defendant, by and through its agents, servants and employees, was negligent in its care and treatment of decedent and deviated from the standard of care in that it:

    (a)    failed to diagnose decedent's hyperlipidemia;

    (b)    failed to recommend or obtain lipid panels and other diagnostic testing;

      (c)      failed to accurately report diagnostic testing that was completed;

      (d)      failed to treat decedent's hyperlipidemia;

      (e)      failed to obtain appropriate informed consent; and

      (f)      was otherwise negligent in their care and treatment of decedent

43. As a direct and proximate result of the aforesaid negligence of the Defendants and their employees/agents, decedent suffered mental anguish and anxiety, pain and suffering and serious physical injuries resulting in her death, loss of chance of survival, was prevented and will be prevented in the future from engaging in activities commonly enjoyed by persons of her age and stature, loss of income and earning capacity, and has incurred past medical expenses.

44. Dominic Scatasti, as Personal Representative of the Estate of Nicole Scatasti, demands judgment against the Defendant for decedent's conscious pain and suffering.

45. As a further result of the death of his wife, Dominic Scatasti has been and will be deprived of the expectation of pecuniary benefits which would have resulted from the continued life of his wife.

46. As a further result of the death of his wife, Dominic Scatasti has and will continue to suffer a loss of consortium, grievous mental anguish, pain, and suffering.

47. As a further result of the death of his wife, Dominic Scatasti has and will continue to suffer the loss of his wife's support, guidance, affection and companionship.

48. Dominic Scatasti demands judgment against Defendant in the amount of the present value of the loss of pecuniary benefits to him, plus whatever sum the Court deems just compensation for the loss of his wife's support, guidance, affection and companionship, for mental anguish resulting from his wife's death and for permanent emotional damage resulting therefore, as the Court will award, plus interest and court costs.

49. As a result of the death of her mother, Plaintiff T.C. has been and will be deprived of the expectation of pecuniary benefits which would have resulted from the continued life of her mother.

50. As a result of the death of her mother, Plaintiff T.C. has and will continue to suffer the loss of her mother's parental guidance, affection and companionship.

51. As a result of the death of her mother, Plaintiff T.C. has and will continue to suffer grievous mental anguish, pain and suffering.

52. Dominic Scatasti, as guardian of Plaintiff T.C., demands judgment against the Defendant in the amount of the present value of the loss of pecuniary benefits to Plaintiff, plus whatever sum the Court deems just compensation for the loss of her mother's parental guidance, affection and companionship, for mental anguish resulting from her mother's death, and for permanent emotional damages resulting therefore, plus interest and court costs.

WHEREFORE, Plaintiff demands judgment against the Defendant for general and special damages, plus costs and interest in an amount to be determined by the Court.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

 /s/ Timothy E. Lengkeek
Timothy E. Lengkeek (Bar I.D. 4116)
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6605
Facsimile: (302) 576-3308
E-mail: tlengkeek@ycst.com
*Attorneys for Plaintiff*

Dated: December 1, 2017